IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

WILLIAM STONER,                    :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :
                                   :     No. 5:15-CV-102 (CAR)
CHIQUITA A. FYE, M.D.,             :
NORMAN HOWARD FITZ-                :
HENLEY, M.D.,                      :
                                   :
                                   :
        Defendants. [1]            :
_____:

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR SUMMARY JUDGMENT

Plaintiff William Stoner brings deliberate indifference claims pursuant to 42 U.S.C. § 1983, as well as Georgia state law medical malpractice claims against Defendants Dr. Norman Howard Fitz-Henley and Dr. Chiquita A. Fye. Plaintiff contends Defendants violated his Eighth Amendment rights by failing to acknowledge his complaints and symptoms, review his medical records, or take any action despite knowing his risk of seizures from withdrawal of his prescribed medications. Currently before the Court is Dr. Fitz-Henley's Motion for Partial Summary Judgment [Doc. 27]

---

[1] The Court notes that Plaintiff has also named unknown medical and prison staff members as defendants in this case. Despite a full discovery period, Plaintiff has neither identified nor served the unknown defendants. At this procedural posture, the Court finds that any claims against the unknown defendants are due to be DISMISSED without prejudice. *See* Fed.R.Civ.P. 4(m); *see also James v. Mazda Motor Corp.*, 222 F.3d 1323, 1324 (11th Cir.2000).

and Dr. Fye's Motion for Summary Judgment [Doc. 39].  After careful consideration, the Court finds genuine issues of material fact exist as to Defendants' liability, and Defendants are not entitled to qualified immunity.  Thus, Defendants' Motions [Docs. 27 & 39] are **DENIED**.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[3]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[4]  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[5]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[4] *See id.* at 249-52.
[5] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[6]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[7]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[8]

## BACKGROUND

For purposes of this Motion, the material facts in the light most favorable to Plaintiff, the nonmovant, are as follows:

On February 11, 2013, Plaintiff William Stoner arrived at the Baldwin County jail to serve his 60-day sentence.[9]  Plaintiff brought  his prescription medications in a plastic bag, including Xanax, Oxycodone, and Coumadin.[10]  Later that morning, Plaintiff was transferred to Bleckley Probation and Detention Center ("Bleckley PDC") with these prescriptions, and Plaintiff underwent an initial health and diagnostics screening.[11]  During the screening, it was well documented that Plaintiff suffered from panic attacks,

---

[6] *Celotex Corp.,* 477 U.S. at 323 (internal quotation marks omitted).

[7] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.,* 477 U.S. at 324-26.

[8] *See Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991).

[9] Def. Dr. Fitz-Henley's Stmt. of Mat. Facts, [Doc. 27-2] at para. 1.

[10] *Id.,* Ex. A. at D52, [Doc. 27-3] at p. 16.

[11] *Id,* Ex. A. at D52, [Doc. 27-3] at p. 16.; *Id.,* [Doc. 27-2] at para. 2.

degenerative disc disease, and blood clots, and that he had recently experienced a seizure after being removed from his current prescription medications.[12]   Plaintiff's current medication dosages included two milligrams of Xanax, up to five times a day; thirty milligrams of Oxycodone, or two tablets four times a day; and four milligrams of Coumadin, or one and half tablets daily.[13]   After the initial screening, the Bleckley PDC physician, Dr. Moore, ordered Plaintiff to be transferred to a facility with 24-hour nursing care due to the risk of withdrawals from his medication.[14]   Dr. Moore also ordered Plaintiff undergo a mental health evaluation and receive Coumadin.[15]

On the evening of February 11, 2013, Plaintiff was transferred to Macon State Prison ("MSP"), pending a more permanent assignment, as MSP has 24-nursing care. MSP does not, however, perform mental health evaluations.[16]   Because MSP is a Level V security prison, and Plaintiff was a first-time probation offender, Plaintiff was placed in administrative segregation for his own protection.[17]

---

[12] *Id.*, Ex. A. at D23, D97, [Doc. 27-3] at p. 13, 15.
[13] *Id.*, Ex. A. at D24, D139, [Doc. 27-3] at p. 14, 44.
[14] *Id.*, Ex. A. at D40, [Doc. 27-3] at p. 18.
[15] *Id.*, [Doc. 27-2] at para. 3.
[16] *See id.*, [Doc. 27-2] at para. 4.
[17] *See id.*, [Doc. 27-2] at paras. 4-5; Def. Dr. Chiquita Fye's Dep., [Doc. 30-1] at p. 103-04.

Plaintiff alleges that all of his medications were transferred with him to MSP. However, Defendants dispute this, and the Instrasystem Transfer Form only listed his current medications as Coumadin.[18]   The Intrasystem Transfer Form is a two-page document that is filled out when a prisoner is transferred to a new facility and sent with the prisoner's medical records.   The facility the prisoner is leaving fills out the top portion on the first page of the Form, and the new facility fills out the bottom half upon the prisoner's arrival.[19]   On the top half of Plaintiff's Form, under "document medical problems," Bleckley PDC listed DDD (degenerative disc disorder), anxiety, and seizure, and under "additional information," it stated "currently taking Xanax 2mg 5xday, Oxycodone 30mg 2 tab 4xday, Coumadin 4 mg 1 ½ qd," "send[ ] to 24 [hour] nursing facility."[20]   On the bottom half of the Form, MSP documented that upon arrival Plaintiff felt "very disoriented" because he had not taken his Xanax medication.[21]

In general, MSP is considered a non-narcotic facility.[22]   MSP does not treat patients who require benzodiazepines such as Xanax, nor does it treat prisoners going through withdrawal from benzodiazepines.   Xanax is not available in MSP's Medical

---

[18] Def. Dr. Fitz-Henley's Stmt. of Mat. Facts, Ex. A. at D50-51, [Doc. 27-3] at p. 17, 19.
[19] Def. Dr. Fye's Dep., [Doc. 30-1] at p. 47.
[20] Dr. Fitz-Henley's Stmt. of Mat. Facts, Ex. A. at D50, [Doc. 27-3] at p. 19.
[21] *Id*.
[22] Pl. William Stoner's Dep., [Doc. 33] at p. 64.

5

Department's formulary.[23]  The only benzodiazepine MSP carries is Valium, which is for acute seizures and located in the emergency cart.[24]  But no medication is absolutely prohibited at MSP; especially, if the medication is necessary for lifesaving purposes.[25]  A physician at MSP would just have to order the medication from outside the formulary, which may take up to 48 hours to receive.[26]

Typically, at MSP, the Medical Director, Dr. Chiquita Fye, and two midlevel providers, such as nurse practitioners or advanced practice nurses, treat the prisoners. However, at the time Plaintiff was transferred to MSP, the Medical Department was short staffed, and only one midlevel provider was working with Dr. Fye.  Thus, Dr. Fye arranged with Vista Staffing to have a contract provider assist at MSP.[27]

On February 12, 2013, the day after Plaintiff's arrival, Vista Staffing sent Dr. Norman Fitz-Henley, an internal medicine physician, to work at MSP.[28]  Dr. Fitz-Henley, accompanied by nurses and prison guards, met with Plaintiff.[29]  Dr. Fitz-Henley and Plaintiff dispute what happened during this encounter.

---

[23] *See* Def. Dr. Fitz-Henley's Stmt. of Mat. Facts, [Doc. 27-2] at para. 8.
[24] Def. Dr. Fye's Dep., [Doc. 30-1] at p. 138.
[25] *Id*. at p. 30.
[26] *Id*. at p. 126-27.
[27] *Id*. at p. 33, 136-37.
[28] Def. Dr. Fitz-Henley Dep., [Doc. 32] at p. 13.
[29] *Id*. at p. 35-36.

According to Plaintiff, Dr. Fitz-Henley and Plaintiff's interaction occurred in a medical examination room and lasted approximately 30 minutes.  Dr. Fitz-Henley asked about Plaintiff's medical condition and drew his blood, but he did not perform any kind of physical examination.  The medical bag that was transferred with Plaintiff to MSP was sitting on the counter in the exam room, which included his prescriptions and prison medical records.  Plaintiff explained to Dr. Fitz-Henley that he understood it was a non-narcotic facility, but Plaintiff asked Dr. Fitz-Henley for his Xanax to prevent a potentially life threatening seizure.  Dr. Fitz-Henley reiterated to Plaintiff that MSP was a non-narcotic facility, and he reassured Plaintiff he was going to be fine.  Dr. Fitz-Henley did not order Plaintiff his Coumadin or any other medical treatment after this encounter.[30]

According to Dr. Fitz-Henley, however, Plaintiff never advised him of Plaintiff's medications or risk of seizure.  Dr. Fitz-Henley states that although he was present while the nurses and prison guards met with Plaintiff, he merely observed Plaintiff's interactions with them; he had no real interactions with Plaintiff.[31]  He did not perform a physical evaluation of Plaintiff, and did not possess or review Plaintiff's medical

---

[30] Pl. Dep., [Doc. 33] at p. 61-64.
[31] Def. Dr. Fitz-Henley Dep., [Doc. 32] at p. 37-40, 42-43, 44-45, 56.

records. He does state that through his observations of Plaintiff, he identified no medical issues requiring treatment, no concerning vital signs, and no acute distress. Additionally, before arriving at MSP, Dr. Fitz-Henley spoke with nurses at Bleckley PDC who informed him Plaintiff was on medication that required 24-hour nursing care, and from his interaction with the staff, Dr. Fitz-Henley learned MSP was trying to locate a facility to transfer Plaintiff for proper treatment.[32]

While at MSP, it is undisputed Dr. Fitz-Henley filled out two forms: (1) a Medical Classification Form stating Plaintiff was "in no condition to accept work assignment under any circumstances due to serious health conditions";[33] and (2) a Medical Encounter Form stating that (a) Plaintiff was a new arrival on Coumadin, (b) MSP does not or cannot accommodate inmates on this medicine, and (c) Plaintiff was due for transfer to an appropriate facility, but Plaintiff's transfer was not a medical issue at this point.[34]   In his deposition, Dr. Fitz-Henley further explained Plaintiff suffered from "serious health conditions" requiring a "no-work status," including degenerative joint disease, history of drug abuse, anticoagulation, and deep vein thrombosis.[35]   Dr. Fitz-

---

[32] *Id.* at 28, 44.
[33] *Id.* at p. 39-41.
[34] *Id.*, Ex. E [Doc. 32-1] at p. 25.
[35] *Id.*, [Doc. 32] at p. 41.

Henley explained that he was "involve[ed]" in Plaintiff's "matter" for approximately four hours that day; he did not see any other prisoners; and he did not return to MSP the following day.[36]  After the meeting with Dr. Fitz-Henley, Plaintiff returned to his cell in administrative segregation.

At MSP there are extensive policies and procedures in place to ensure prisoners are regularly monitored. Moreover, the nursing staff at MSP is available 24-hours a days,[37] and they deliver medications to prisoners four times a day.   However, there is no door log for Plaintiff or any other information to confirm MSP follows its monitoring policies and procedures.[38]  Plaintiff insists he shouted from his cell that he needed his medications and banged on the door, but he was continuously ignored.[39]

On February 13, 2013, the day after he met with Dr. Fitz-Henley, Plaintiff remained in segregation; he had not left his cell since the morning of the 12th and had not received any medication.[40]  Around 4:00 pm, Plaintiff's mother, Margaret Stoner, called MSP's Medical Department and spoke with the Medical Director, Dr. Fye.  Mrs.

---

[36] *Id.* at p. 43, 55.
[37] Def. Dr. Fitz-Henley's Stmt. of Mat. Facts, Ex. B, [Doc. 27-4] at p. 34-42; Def. Dr. Fye's Dep., [Doc. 30-1] at p. 11-12, 46.
[38] Def. Dr. Fye's Dep., [Doc. 30-1] at p. 110-11.
[39] Pl.'s Dep., [Doc. 33] at p. 72-73.
[40] *Id.* at p. 70-75.

9

Stoner wanted to confirm her son was receiving his medications.  Mrs. Stoner informed Dr. Fye that Plaintiff was taking Oxycodone, Xanax, and Coumadin, and she explained he would have a seizure if he did not receive his medications.  Dr. Fye first told Plaintiff's mother that she did not have Plaintiff's medical records; however, Dr. Fye then responded that Plaintiff told the medical staff he was taking those medications, but they do not believe what prisoners say.  Because it was after hours, Dr. Fye told Mrs. Stoner she would look into it first thing in the morning.[41]

Nonetheless, Dr. Fye immediately pulled Plaintiff's medical records to make herself familiar with his file.  Dr. Fye determined there was no need to change any orders, as the only medication he came to MSP with was Coumadin.  Dr. Fye did not examine or assess Plaintiff's condition in person, nor did she notify anyone at MSP about Mrs. Stoner's concerns.[42]

On the morning of February 14, 2013, Plaintiff was found on the floor of his cell unresponsive, incontinent of bowl and bladder, and with labored breathing.[43]  Plaintiff was rushed to the Medical Department on a stretcher.  Dr. Fye immediately assessed

---

[41] Margaret Stoner's Dep., [Doc. 42-4] at p. 14-15.
[42] Def. Dr. Fye Dep., [Doc. 30-1] at p. 55-57.
[43] Def. Dr. Fitz-Henley's Stmt. of Mat. Facts, Ex. A. at D38, [Doc. 27-3] at p. 37.

him as having possible withdrawals from his medications and told security to call 911.[44]

Plaintiff was transferred to Flint River Hospital and then airlifted to the Medical Center

of Central Georgia where he remained for three to four days.[45]   On February 17, 2013,

Plaintiff returned to MSP and, the next day, was transferred to Augusta State Medical

Prison to receive methadone treatment.[46]   Plaintiff alleges the complete withdrawal of

benzodiazepine caused him to have a seizure and resulted in significant physical and

psychological injuries.

## DISCUSSION

Based on these events, Plaintiff brings § 1983 claims against Defendants Dr. Fitz-

Henley and Dr. Fye for deliberate indifference to his serious medical needs, in violation

of the Eighth Amendment, as well as Georgia state law medical malpractice claims.   Dr.

Fitz-Henley and Dr. Fye seek summary judgment on the § 1983 claims, arguing Plaintiff

cannot show they were deliberately indifferent to Plaintiff's serious medical needs, and,

they are both entitled to qualified immunity.   The Court will address each argument in

turn.

---

[44] *Id*.; Def. Dr. Fye Dep., [Doc. 30-1] at p. 69.
[45] Def. Dr. Fye Dep., [Doc. 30-1] at p. 71-72.
[46] *Id*. at 78-79.

## I.  Deliberate Indifference to Serious Medical Needs

"It is well settled that the deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment."[47]   "[N]ot every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."[48]   "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical Malpractice does not become a Constitutional violation merely because the victim is a prisoner."[49]  "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment."[50]

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."[51] "First, the plaintiff must prove an objectively serious medical need," and second, "the

---

[47] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted).

[48] *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999) (quoting *Estelle*, 429 U.S. at 105) (internal quotation marks omitted).

[49] *Id.*

[50] *Id.*

[51] *Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted).

plaintiff must prove that the prison officials acted with deliberate indifference to that need."[52]

"A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"[53]  "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition."[54]  In either case, the medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm."[55]

To establish the second element, deliberate indifference to the serious medical need, the plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence."[56]  "[A] simple disagreement over a diagnosis or course of treatment does not constitute deliberate indifference.  As long as the medical treatment provided is 'minimally adequate,' a

---

[52] *Id.*

[53] *Id.*

[54] *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

[55] *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted).

[56] *Brown*, 387 F.3d at 1251 (citing *McElligott*, 182 F.3d at 1255)).

prisoner's preference for a different treatment does not give rise to a constitutional claim."[57]

Because Dr. Fitz-Henley and Dr. Fye's interactions with Plaintiff were substantially different, the Court will address separately whether Dr. Fitz-Henley or Dr. Fye were deliberately indifferent to Plaintiff's serious medical needs and then turn to their qualified immunity arguments.

### A. Dr. Fitz-Henley[58]

#### i. Serious Medical Need

First, Dr. Fitz-Henley argues Plaintiff cannot show he had an objectively serious medical need, as Plaintiff was not exhibiting any withdrawal symptoms when Dr. Fitz-Henley visited him on February 12, 2013. However, Plaintiff contends his objectively serious medical need is evidenced by his prescription medications and the withdrawal seizure he later endured. The Court agrees.

On February 11, 2013, Plaintiff entered the Georgia Department of Corrections with his prescribed medications, Xanax, Oxycodone, and Coumadin. Plaintiff was ultimately transferred from Beckley PDC to MSP with his medical records and an Intrasystem Transfer Form. Though the second page of the Form only listed Coumadin

---

[57] *Chatham v. Adcock*, 334 F. App'x 281, 288 (11th Cir. 2009) (per curiam) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1504-5 (11th Cir. 1991); *Adams v. Poag*, 61 F.3d 1537, 1547 (11th Cir. 1995)).

[58] For purposes of this Motion, Dr. Fitz-Henley does not dispute he was acting under the color of state law and thus can be held liable under § 1983. Def.'s Mtn. for Partial Sum. Judgment, [Doc. 27-1] at p. 9.

as his medications, the first page clearly stated Plaintiff suffered from anxiety and seizures, was currently taking Xanax, Oxycodone, and Coumadin, and complained of feeling "very disoriented" because he had not taken his medications.[59]   Furthermore, Plaintiff was specifically transferred to a facility with 24-hour nursing care due to the risk of benzodiazepine withdrawals.[60]

On February 12, 2013, Dr. Fitz-Henley met with Plaintiff and determined Plaintiff was not in acute distress at the time.   However, Dr. Fitz-Henley did not request or review any of Plaintiff's medical records, nor did he conduct a physical examination. Moreover, the nurses at Bleckley PDC informed Dr. Fitz-Henley that Plaintiff was taking certain medications that required twenty-four hour nursing care.[61]

According to Plaintiff, he also informed Dr. Fitz-Henley that he took Xanax, and specifically, he was at risk of having a seizure without it.   Indeed, Dr. Fitz-Henley specifically refers to Plaintiff as suffering from a "serious health condition." Dr. Fitz-Henley marked on Plaintiff's medical classification chart that "[s]ubject is in no condition to accept work assignment under any circumstances due to *serious health conditions*."[62]   Dr. Fitz-Henley stated these serious health conditions included degenerative joint disease, history of drug abuse, anticoagulation, and deep vein

---

[59] Dr. Fitz-Henley's Stmt. of Mat. Facts, Ex. A. at D50, [Doc. 27-3] at p. 19.
[60] *Id*., Ex. A at D40, [Doc. 27-3] at p. 18.
[61] Def. Dr. Fitz-Henley's Dep., [Doc. 32] at p. 28.
[62] *Id*. at p. 40 (emphasis added).

thrombosis.[63]  Most telling Plaintiff suffered from an objectively serious medical need is the fact he was found unresponsive in his cell due to a benzodiazepine-withdrawal seizure.

Based on this evidence, Plaintiff has established there are sufficient facts to demonstrate he had an objectively serious medical need on February 12, 2013, when Dr. Fitz-Henley saw him.[64]

### ii.   Deliberate Indifference

Second, Dr. Fitz-Henley argues no evidence exists to show he was subjectively aware of Plaintiff's serious medical condition or refused to provide care for that condition.  Dr. Fitz-Henley argues he did not review Plaintiff's medical records, and he was neither aware of Plaintiff's prescription medications nor when Plaintiff had taken them last.  Further, there was no reason for Dr. Fitz-Henley to suspect MSP would house a prisoner taking benzodiazepines or narcotics, as it was a known as a non-narcotics facility.  Thus, Dr. Fitz-Henley contends he cannot be liable for his "failure to

---

[63] *Id.* at p. 41. Though Dr. Fitz-Henley did not write that on the chart, he admitted in his deposition that is what he meant when he wrote "serious health condition."

[64] *See Hilyer v. Dunn*, No. 15-00356-WS-N, 2016 WL 7093437, at *2 (Oct. 28, 2016), *adopted by the District Court*, 2016 WL 7045731 (S.D. Ala. Dec. 2, 2016) ("There can be no doubt that controlling seizures constitutes a serious medical need, *see Johnson v. Hay*, 931 F.2d 456, 461 (8th Cir. 1991); *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985)."); *see also Hill*, 40 F.3d at 1188 ("The seriousness of an inmate's medical needs also may be decided by reference to the effect of delay in treatment. Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious.").

alleviate a significant risk that he should have perceived but did not."[65]  However, the Court finds genuine issues of material fact exist as to Dr. Fitz-Henley's deliberate indifference.

On February 12, 2013, Plaintiff states he told Dr. Fitz-Henley about his prescription medications and risk of having withdrawal seizures without his medication.  Moreover, Plaintiff recalls seeing his medications in a plastic bag in the room with them, along with his medical records.  Additionally, Dr. Fitz-Henley's own testimony contradicts that he knew nothing about Plaintiff's medical condition, as he specifically placed Plaintiff on "no work status" due to serious health conditions. Indeed, Dr. Fitz-Henley spoke with nurses from Beckley PDC regarding Plaintiff's condition and was aware Plaintiff would need to be transferred to a different facility that could provide better monitoring.  Thus, genuine issues of material fact clearly exist as to whether Dr. Fitz-Henley was subjectively aware of Plaintiff's serious medical condition.[66]

Even still, to show deliberate indifference to a serious medical need, Plaintiff must show Dr. Fitz-Henley's actions rose above mere negligence.  Here, sufficient

---

[65] *See Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).

[66] *See Steele v. Shah*, 87 F.3d 1266, (11th Cir. 1996) (reversing a district court's grant of summary judgment where the doctor detined medication, even though the defendant-doctor knew about the potential risk without the medicine); *Cf. Chatham*, 334 F. App'x at 281 (determining there was no genuine issue of material fact as to deliberate indifference where the plaintiff did not inform the defendants of his alleged serious medical condition and was on other psychotropic medication at the time).

evidence exists from which a jury could do so. Conduct that is more than mere negligence includes: "(1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all."[67]  Assuming Plaintiff told Dr. Fitz-Henley about his risk of withdrawal seizures, Dr. Fitz-Henley made no attempt to substitute Plaintiff's Xanax with other medications available at MSP, nor did he order anyone to closely monitor Plaintiff.  During the approximate thirty-minute encounter with Plaintiff, Dr. Fitz-Henley did not perform a physical examination or even order Plaintiff's Coumadin, which could be administered at MSP.  Ultimately, Dr. Fitz-Henley simply determined Plaintiff was not in acute distress and assumed prison officials would monitor Plaintiff appropriately.[68]

According to Dr. Fitz-Henley, he never reviewed or requested Plaintiff's medical records or even had a doctor-patient relationship with Plaintiff; however, he was

---

[67] *Magwood v. Sec'y, Fla. Dep't of Corr.*, 652 F. App'x 841, 844 (11th Cir. 2016) (per curiam) (citing *McElligott*, 182 F.3d at 1255).

[68] *Keele v. Glynn County, Ga.*, 938 F.Supp.2d 1270, 1296 (S.D. Ga. 2013) (stating, where there was evidence of the defendant's subjective knowledge, the Court's finding of deliberate indifference was not altered by [the defendant's] observations that, at approximately 6:30 p.m., [the plaintiff] was awake and alert and walked unassisted to the medication cart to receive her medications….and [there were] no signs and symptoms of distress after questioning [the plaintiff] and taking her vital signs at approximately 9:00 p.m").

"involv[ed]" in Plaintiff's "matter" for approximately four hours at MSP.[69]   Had he reviewed those records, Dr. Fitz-Henley would have seen that the records clearly indicated Plaintiff was prescribed a high dosage of Xanax, had not received any medication since arriving at the Georgia Department of Corrections, and was subject to seizures from benzodiazepine withdrawal.[70]

Based on this evidence and taking Plaintiff's account of his interaction with Dr. Fitz-Henley as true, a reasonable jury could conclude that Dr. Fitz-Henley was deliberately indifferent to Plaintiff's serious medical need.   Therefore, granting summary judgment on this issue is inappropriate.

B.  Dr. Fye

i.  *Deliberate Indifference*

Dr. Fye does not dispute that Plaintiff had an objectively serious medical need. Instead, Dr. Fye argues she did not have any subjective knowledge of this medical need, and even if that knowledge could be inferred, she did not act with deliberate

---

[69] Def. Dr. Fitz-Henley's Dep., [Doc. 32] at p. 55.

[70] *See Greason v. Kemp*, 891 F.2d 829, 835 (11th Cir. 1990) (holding a reasonable jury could find deliberate indifference to a prisoner's medical needs when the doctor abruptly discontinued the prisoner's anti-depressant medication without reviewing his clinical file, conducting a mental status examination, or ordering close monitoring, and the doctor would have realized the prisoner needed close monitoring had he reviewed the prisoner's file).

indifference to Plaintiff's medical need.  To support her argument, Dr. Fye points to *Goodman v. Kimbrough*.[71]  However, this case is clearly distinguishable from ours.

In *Goodman*, the Eleventh Circuit agreed that the prison officials could not be held liable for deliberate indifference even though they failed to perform the required cell checks, deactivated the emergency call buttons without investigating the call, and ignored sounds of violence and complaints of a fight.[72]  However, a key factor in the Eleventh Circuit's analysis was that there was no evidence the prison officials "harbored a subjective awareness that [the plaintiff] was in serious danger while in his cell."[73]  Unlike in *Goodman*, Plaintiff here presents sufficient evidence from which a reasonable fact finder could infer both that Dr. Fye had both a subjective knowledge of Plaintiff's substantial risk of serious harm, and she knowingly or recklessly disregarded that risk.[74]

On February 13, 2014, at approximately 4:00 p.m., Plaintiff's mother, Margaret Stoner, spoke with Dr. Fye on the phone.  Mrs. Stoner explained that Plaintiff had been taking Xanax, Oxycodone, and Coumadin, and Plaintiff would have a seizure without

---

[71] 718 F.3d 1325 (11th Cir. 2013).

[72] *Id*.at 1332.

[73] *Id*.

[74] *See id*. ("Whether prison officials had the requisite awareness of the risk 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" (quoting *Farmer*, 511 U.S. at 842)).

his medicine.   Dr. Fye responded that it was "after hours" but "first thing in the morning"[75] she would look into the matter.   After speaking to Mrs. Stoner, Dr. Fye pulled Plaintiff's medical records but felt a change in orders was not needed, as the only medication Plaintiff arrived at MSP with was Coumadin.[76]   Dr. Fye did not go check on Plaintiff, she did not order the administration of any drugs, and she did not notify anyone of his risk of seizures without his medicine.

In Plaintiff's medical records, it was clearly documented that he was prescribed high dosages of Xanax and Oxycodone and had not taken any medications in 48 to 72 hours.   Further, the records also showed he had a history of seizures when taken off his medicine and complained of feeling disoriented when he arrived at MSP.   As a physician, Dr. Fye knew when taking a patient off of benzodiazepines it was necessary to gradually decrease the medicine.[77]   Even though MSP's Medical Department does not carry Xanax, it was still possible for a physician to order the medicine from an outside pharmacy.[78]   Dr. Fye stated that no medication was absolutely prohibited at MSP when it is for lifesaving measures.[79]

---

[75] Mrs. Stoner Dep., [Doc. 42-4] at p. 15].
[76] Def. Dr. Fye's Dep., [Doc. 30-1] at p. 56-57.
[77] *Id*. at p. 40.
[78] *Id*. at p. 126-27.
[79] *Id*. at p. 29-30.

Dr. Fye contends she knew Plaintiff was confined to administrative segregation, where he was supposed to be monitored on a regular basis and given access to the medical staff.   However, Plaintiff was in a high security segregation unit where monitoring only consisted of prison guards looking through a small window on Plaintiff's cell door.[80]   Nurses were available and provided prisoners their medications four times a day, but Plaintiff was never ordered any medication while at MSP, and there is no evidence that any medical staff checked-in on him.   Indeed, there is no evidence that anyone at MSP was closely monitoring Plaintiff, as Plaintiff states he shouted and banged on his cell door, but no one responded. In fact, it appears no one monitored Plaintiff until the morning of February 14, 2013, when Plaintiff was found unresponsive on the floor of his cell.

As such, a reasonable jury could conclude Dr. Fye had a subjective knowledge of the risk of Plaintiff having a benzodiazepine-withdrawal seizure, and she knowingly, or at minimum, recklessly disregarded that risk.[81]   Thus, the Court finds a genuine issues of material fact exist as to whether Dr. Fye was deliberately indifferent to Plaintiff's serious medical need.   Because summary judgment is not appropriate here, the Court now turns to Defendants' qualified immunity arguments.

---

[80] *Id*. at p. 18.
[81] *Goodman*, 718 F.3d at 1332..

## II. Qualified Immunity

Both Dr. Fye and Dr. Fitz-Henley argue they are entitled to qualified immunity on Plaintiff's § 1983 claims.   "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[82]   To be entitled to qualified immunity, the official must "first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[83]   Once the official has made that showing, the burden shifts to the plaintiff to establish: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[84]   The clearly established law must provide the defendants with "fair warning" that their conduct deprived the plaintiff of a constitutional right.[85]

Here, it is undisputed Defendants were acting within their discretionary authority, and as explained above, the Court has already determined that a reasonable jury could conclude Defendants violated Plaintiff's Eighth Amendment constitutional

---

[82] *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir.2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[83] *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

[84] *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks and citations omitted).

[85] *Hope*, 536 U.S. at 739-41.

rights.   Thus, the Court must determine whether Defendants' alleged conduct violated clearly established law.

A plaintiff "can demonstrate that the contours of the right were clearly established in several ways."[86]   First, a plaintiff can show that "a materially similar case has already been decided."[87]   Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation."[88]   Finally, the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'"[89]

A.   Dr. Fitz-Henley[90]

Dr. Fitz-Henley argues there is no law clearly establishing that a physician's decision not to order prescription benzodiazepines, under these circumstances, violates an inmate's constitutional rights.   However, "[a] judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue."[91]   Plaintiff points to *Lancaster v. Monroe County*,

---

[86] *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012).

[87] *Id*. (internal quotation marks and citations omitted). "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from preexisting law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

[88] *Id*. (internal quotation marks and citations omitted).

[89] *Id*. (citation omitted).

[90] *Hope*, 536 U.S. at 739-41.

[91] *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

Alabama;[92] *Harris v. Coweta County*;[93] and *Seals v. Shah*,[94] to show Dr. Fitz‑Henley's actions violated clearly established law.

In each case, the courts reiterate the law is clearly established that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate."[95]   It is also clearly established "that an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life‑threatening condition or an urgent medical condition that would be exacerbated by delay."[96]

Here, Plaintiff claims he specifically told Dr. Fitz‑Henley about his serious medical need, and Dr. Fitz‑Henley failed to provide treatment or medicine to Plaintiff to prevent a benzodiazepine‑withdrawal seizure.   Assuming such to be true, the case law

---

[92] 116 F.3d 1419 (11th Cir. 1997), *overruled on other grounds by LaFrere v. Quezada*, 588 F.3d 1317 (11th Cir.2009)).

[93] 21 F.3d 388, 393-94 (11th Cir. 1994) ("The tolerable length of delay in providing medical attention depends on the nature *394 of the medical need and the reason for the delay. A few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference." *E.g., Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990)).

[94] 145 F.Supp.2d 1378 (N.D. Ga. 2001) ("The defense of qualified immunity is not available to a defendant guilty of deliberate indifference to serious medical needs.").

[95] *Lancaster*, 116 F.3d at 1425; *see also Adams*, 61 F.3d at 1543-44 (The Eleventh Circuit has "consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference.") (citing *Carswell v. Bay Cty*., 854 F.2d 454, 457 (11th Cir. 1988)); *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986) ("[T]he failure to provide diagnostic care and medical treatment known to be necessary [i]s deliberate indifference.").

[96] *Lancaster*, 116 F.3d at 1425.

in this Circuit clearly put Dr. Fitz-Henley on notice that his conduct was a violation of clearly established law.[97]

B. Dr. Fye

Dr. Fye argues these cases cited by Plaintiff provide no assistance in clearly establishing the law as to her. However, for the same reasons that Dr. Fitz-Henley is not entitled to qualified immunity, Dr. Fye is also not entitled to qualified immunity.

Dr. Fye was on notice of Plaintiff's medical needs and aware that without his medicine Plaintiff would suffer a withdrawal seizure. Plaintiff's medical records, which Dr. Fye states she read, further indicated he had gone 48 to 72 hours without any medications, and he complained of feeling disoriented the day he arrived at MSP two days before Dr. Fye reviewed his records. Yet, Dr. Fye did not go check on Plaintiff or order any additional monitoring. Again, assuming a jury finds this to be deliberate

---

[97] *See, e.g., McBridge v. Houston Cnty. Health Care Authority*, 658 F. App'x 991, 999 (11th Cir. 2016) (per curiam) (holding that qualified immunity did not apply to an officer who failed to provide medical care despite detainees screams for help and complaints of headaches and a sore throat, resulting in a serious rash and the skin on his lips peeling off) ; *Steele*, 87 F.3d at 1268-71 (finding an issue of material fact as to whether a clearly established right was violated when a psychiatrist discontinued the inmate's medication on the basis of one cursory interview and without reviewing any medical records beyond the treatment plan sent from the previous facility); *McElligott*,182 F.3d at 1260 (holding two doctors violated a clearly established right when they did very little to treat the inmate's pain or respond to the deterioration of his condition, despite being aware that the medication prescribed to the inmate was not treating the severe pain he was experiencing); *Greason*, 891 F.2d at 832-34 (holding that jury could find that a psychiatrist violated a clearly established right when he failed to monitor the deceased after having been warned by the inmate's parents and two other inmates that the deceased had tried to commit suicide); *Aldridge v. Montgomery*, 753 F.2d 970, 973-974 (11th Cir. 1985) (holding that the jury should determine whether officers violated a pretrial detainee's constitutional rights by ignoring a one and half inch bleeding cut for two and a half hours).

indifference, the case law in this circuit makes clear that such a delay in treating Plaintiff amounted to deliberate indifference.[98]

Furthermore, "[a] core principle of Eighth Amendment jurisprudence ... is that prison officials with knowledge of the need for [medical] care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness."[99]  Thus, even if the cases Plaintiff points to have some distinguishable facts, the clearly established "core" principles in these cases still gave Dr. Fye fair warning that her delay or refusal to provide Plaintiff with any medications or with treatment she knew was medically necessary to prevent a benzodiazepine-withdrawal seizure violated Plaintiff's constitutional right to adequate medical care.

## CONCLUSION

Based on the foregoing, Defendants' Motions for Partial Summary Judgment and Summary Judgment [Docs. 27 & 39] are **DENIED**.[100]

---

[98] *See id.*

[99] *McElligott*, 182 F.3d at 1257.

[100] Additionally, the Court finds that any claims against the unknown defendants are due to be DISMISSED, without prejudice. *See* Fed.R.Civ.P. 4(m); *see also James v. Mazda Motor Corp.*, 222 F.3d 1323, 1324 n.1 (11th Cir. 2000).

**SO ORDERED,** this 31st day of March, 2017.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT